IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRET AMERICAN INSURANCE COMPANY, )<br>  )<br>  Plaintiff/Counterclaim Defendant, )<br>  )<br>vs. )<br>  )<br>HONEYWELL INTERNATIONAL INC., )<br>  )<br>  Defendant/Counterclaimant. ) | Civil Action No. 05-857 |

## MEMORANDUM ORDER

Pending before the court is a motion to amend findings and judgment (Doc. No. 91) filed by Great American Insurance Company ("Great American" or "plaintiff"). This court held a bench trial on February 2, 3, 4, 5, and 10, 2009, after which the parties submitted proposed findings of fact and conclusions of law. On May 29, 2009, the court issued a memorandum opinion (Doc. No. 89) and entered judgment in favor of plaintiff and against Honeywell International, Inc. ("Honeywell" or "defendant") in the amount of $130,970.82 (Doc. No. 90).

On June 12, 2009, plaintiff filed the pending motion. Plaintiff requests that the court amend its findings set forth in the memorandum opinion pursuant to Federal Rule of Civil Procedure 52(b), and amend the resulting judgment pursuant to Federal Rules of Civil Procedure 52(b) or 59(e).

### *Standard of Review*

Rule 52b) provides that "[o]n a party's motion filed no later than 10 days after entry of

judgment, the court may amend its findings-or make additional findings-and may amend the judgment accordingly." FED. R. CIV. P. 52(b). "The purpose of Rule 52(b) is to allow a court to correct manifest errors of law or fact, or in limited circumstances, to present newly discovered evidence, but not to 'relitigate old issues, to advance new theories, or to secure a rehearing on the merits.'" Gutierrez v. Ashcroft, 289 F. Supp.2d 555, 561 (D.N.J. 2003) (quoting Soberman v. Groff Studios Corp., No. 99CIV.1005(DLC), 2000 WL 1253211, at *1 (S.D.N.Y. Sept. 5, 2000).

A motion for reconsideration pursuant to Rule 59(e) is similar; the rule provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of judgment." FED. R. CIV. P. 59(e). Relief is appropriate only if one of three situations is shown: "(1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice." Reich v. Compton, 834 F. Supp. 753, 755 (E.D. Pa. 1993) (citing Dodge v. Susquehanna Univ., 796 F. Supp. 829, 830 (M.D. Pa. 1992)).

> Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided . . . . Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly. . . .

Williams v. City of Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) (internal citations omitted).

### *Discussion*

This case arises out of the construction of the Clay Center, in Charlestown, West

Virginia.[1]  Dick Corporation ("Dick") was the project general contractor.  Dick subcontracted various components of the construction of the Clay Center to other companies; Dick subcontracted mechanical work to Limbach Company ("Limbach"), and Limbach in turn subcontracted control system work to Comfort and Process Solutions ("CPS").  Prior to awarding the subcontract to CPS, however, Limbach wanted assurance from Honeywell that CPS was qualified to complete the control system work, since CPS would be installing Honeywell products.  Honeywell represented that CPS was qualified, but Limbach demanded that Honeywell agree that it would complete control system work in the event that CPS failed to do so.  To agree to such an obligation, Honeywell demanded that it be compensated for its costs in carrying out the subcontract.

Honeywell and Limbach entered into Letter Agreements[2] in which Honeywell agreed to assume the obligations of CPS in the event CPS defaulted on the subcontract.  The Letter Agreements further stated that performance and payment bonds "will protect both [Limbach and Honeywell] in the event of default" and "[a]s an obligee under the bond, Honeywell can then pursue the bonding company for its costs beyond those costs covered by the remaining Subcontract balance between Comfort & Process Solutions and Limbach Company."  (Doc. No. 89 at 7.)  Limbach drafted the Letter Agreements and was aware that Honeywell sought compensation for its costs.

CPS eventually defaulted, and Honeywell completed the control system work.  In doing so, however, Honeywell entered into a new contract with Dick under which Honeywell received $388,755.84 for the control system work.  That amount was back-charged ultimately to Rost.

---

[1] The factual background of this case was set forth more fully in the court's memorandum opinion issued after the bench trial setting forth its findings of fact and conclusions of law (Doc. No. 89).
[2] Terms capitalized in this memorandum order shall have the same meanings ascribed to those capitalized terms in the memorandum opinion (Doc. No. 89), unless the context indicates otherwise.

After settling with Limbach and Rost, Great American, the surety, was assigned any claims Limbach and Rost had against Honeywell. Of the amount received by Honeywell, $142,733 was profit. Great American withheld from Honeywell as a set-off $11,762.18 owed to Honeywell for an unrelated matter.

Great American sued Honeywell and requested that the court enter judgment in Great American's favor in the amount of $388,755.84, plus prejudgment interest. Great American raised several claims in the complaint, including a claim for breach of the Letter Agreements. Honeywell moved for summary judgment on this claim, arguing, inter alia, that the parties operated under a mutual mistake and the Letter Agreements should be voided. If the Letter Agreements were voidable by Honeywell, Honeywell would have not been obligated to assume the responsibilities of CPS and would have been free to enter a new contract with Dick. Thus, it would be entitled to retain the entire $388,755.84 amount it received under the Dick contract. The court denied the motion for summary judgment on the ground of mutual mistake, since a "party cannot avoid the legal consequences of his actions on the ground of mistake, even a mistake of fact, where such mistake is the result of negligence on the part of the complaining party," and a "reasonable jury could find that Honeywell failed to take reasonable measures to make sure that the bond would protect Honeywell in the event that CPS defaulted." (Doc. No. 51 at 19, 20.)

With respect to the breach of contract claim, Honeywell noted that the complaint implied that Honeywell was obligated to assume CPS's responsibilities without receiving compensation for its work. Honeywell argued the Letter Agreements unambiguously indicated Honeywell would be compensated for the "costs" of control system work. The court held that:

> It is clear from the evidence of record that the intent of the
> parties was that Honeywell would be compensated for any work it

4

> performed in the event CPS defaulted on its subcontract . . . . Whether compensation for Honeywell's work would come from the balance of CPS's subcontract or the Great American bond depended upon the amount of work Honeywell was required to perform and the amount available for payment under the subcontract. Great American has suggested that Honeywell was required to complete any work not completed or inadequately completed by CPS without the benefit of compensation. The August 2000 letter agreement provides: "[a]s an obligee under the bond, Honeywell can then pursue the bonding company for its costs beyond those costs covered by the remaining Subcontract balance between Comfort & Process Solutions and Limbach Company." The Letter Agreements contemplated that Honeywell would be compensated for any work it performed as a result of a CPS default. This court cannot construe the Letter Agreements to mean Honeywell was to complete CPS's subcontract for free because to do so the court would create an absurd result.

(Id. at 23-24.)[3]

---

[3] During the bench trial, Mark Shaffer, vice president of Limbach, was asked about Limbach's intent with respect Honeywell's ability to recover its costs:

> Q. But you understood that Honeywell was not agreeing to be bound -- limited to the subcontract balance, and that's why --
>
> A. -- they wanted to pursue the bonding company, yes.
>
> Q. So you agree that was the -- Limbach's intent and understanding was that Honeywell not be limited to the subcontract balance in this letter agreement.
>
> A. No. Our letter agreement says we'll pay them the subcontract balance and then they can pursue the bonding company. Whether they got anything from them or not, we didn't know and frankly didn't really care; but it was within the terms of this agreement they could go pursue it if they wanted to.
>
> Q. Because you understood at the time that Honeywell wanted to get paid beyond the subcontract balance whatever the costs were to complete the work.
>
> A. Oh, yeah. Mike [Keller of Honeywell] made that clear up front. First he wanted us to pay for it and we said no, that's not going to happen; and then he wanted the right to pursue the bonding company.

(Trial Tr. of Feb. 2, 2009 (Doc. No. 81) at 132.) This testimony illustrates that Limbach knew Honeywell would not have signed the Letter Agreements unless Honeywell believed it would recover its costs. Limbach, like Honeywell, was mistaken in providing that the bonds would protect Honeywell in the event of default. Despite Limbach not representing Honeywell could "recover" on the bonds because it did not know whether that was true, (Id. at 131-33), Limbach contemplated that Honeywell would be protected by the ability to pursue its costs from the bonding company, (Mem. Op. (Doc. No. 89), Findings of Fact ¶ 12 ("This bond will protect both our firms in the event of default.")).

The court's ruling on Honeywell's motion for summary judgment shaped the issues of fact and law for the bench trial. Two issues included whether Honeywell was entitled to void the Letter Agreements by reason of mutual mistake and what meaning should be assigned to the term "costs" as used in the Letter Agreements.

With respect to the first issue, the court determined that, although there was a mutual mistake, Honeywell could not void the Letter Agreements because it bore the risk of the mistake. The court found that Honeywell failed to take reasonable steps to ensure that the bonds would protect Honeywell if it assumed CPS's obligations. (Doc. No. 89 at 34-35.) If Honeywell had been able to void the Letter Agreements, it would be entitled to retain all payments made to it by Dick.

With respect to the second issue, Honeywell argued for a broad definition of "costs." Since the court already determined that the parties to the Letter Agreements intended that Honeywell would be compensated for its "costs" in the event it assumed the obligations of CPS, Honeywell argued that the term "costs" meant all costs for materials and labor including overhead and profit. If Honeywell prevailed with this argument, under the Letter Agreements Honeywell would be entitled to the full $388,755.84 amount that it received from the new contract it entered into with Dick. The court, however, found the term ambiguous and determined that the term, as used in the Letter Agreements, included expenses for labor, materials, and overhead, but not for profit. (Id. at 32-33.)

After the bench trial, the court concluded that Honeywell breached the Letter Agreements. The court awarded Great American the amount of Honeywell's profit minus the set-off, which resulted in an award of $130,970.82. The court also calculated and awarded interest. (Id. at 39.)

Plaintiff's motion for reconsideration concerns the conclusion of law in the opinion that "[w]hile not voidable, the Letter Agreements do need to be reformed, because the Letter Agreements contemplated Honeywell could be paid its costs under the bonds." (Doc. No. 89, Conclusions of Law ¶ 20.) Plaintiff argues this conclusion is inconsistent with the court's other conclusions that "Honeywell's own negligence caused any mistake," "it is reasonable for Honeywell to bear the risk of the mistake," and the "Letter Agreements are . . . not voidable." (Id. ¶ 19.)

The court appreciates this opportunity to clarify its findings of fact and conclusions of law. In Great American's motion for reconsideration, Great American does not argue new evidence exists that was not previously available or that there has been a change in the controlling law. Plaintiff's motion can only be granted if there is a need to correct manifest errors of law or fact or to prevent manifest injustice.

Notwithstanding plaintiff's arguments, the court's conclusions are consistent. This court's conclusion that rescission was not appropriate was based upon § 152 of the Restatement (Second) of Contracts, which provides:

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

RESTATEMENT (SECOND) OF CONTRACTS § 152(1) (1979). The court determined that the parties were mutually mistaken in believing that the Letter Agreements provided bond protection for Honeywell in the event that CPS defaulted under the subcontract. In accordance with § 152, the court held that the contract was not voidable by Honeywell, because it was reasonable under the circumstances for the risk of any mistake regarding whether the bonds would provide Honeywell

protection be born by Honeywell. The risk referred to was the risk of rescission or having the contract voided.

This court's decision to reform the Letter Agreements was not based upon who should bear the risk of the mistake with respect to rescission of the Letter Agreements, but rather was based upon the recognition that Limbach was not without fault and knew Honeywell would not have provided the assurance that it would perform CPS's obligations unless it could recover its costs. The court modified the contract in accordance with § 158 of the Restatement (Second) of Contracts, which provides: "[i]n any case governed by the rules [concerning mistake], if those rules together with the rules [concerning remedies] will not avoid injustice, the court may grant relief on such terms as justice requires . . . ." RESTATEMENT (SECOND) OF CONTRACTS § 158(2) (1979). The court held that reformation was necessary.

As explained in the court's opinion with respect to the motion for summary judgment, it was understood that Honeywell would be compensated for its costs, and it would have been absurd for the court to find Honeywell was to complete CPS's subcontract for free. Under those circumstances, it would be inequitable to require Honeywell to perform under the subcontract without receiving compensation for its costs. (See Doc No. 89 at 33 n.3 (". . . the court rejected Great American's argument that, in event of CPS's default, Honeywell was obligated to perform work under the subcontract without receiving compensation. . . . [A] contract cannot be interpreted in a manner that creates an absurd result.").) If Honeywell did not perform after CPS defaulted, another party would have had to complete CPS's obligations and would expect to be paid.

Although Honeywell bore the risk that the contract could not be voided and it would have to perform CPS's obligations without obtaining a *profit*, Honeywell did not bear the risk that it

8

would not be able to recover its *costs* since an interpretation of the contract that would preclude Honeywell from recovering its costs would be absurd.  To grant Great American the relief it requests would create an injustice in light of Honeywell's performance of services under its contract with Dick and in light of Limbach's and Rost's knowledge that Honeywell entered into the Letter Agreements believing it could recover its costs.  In the same vein, it would create an injustice if Honeywell could void the Letter Agreements and maintain its profits where Honeywell bore the risk of the mistake.

In Thieme v. Worst, 745 P.2d 1076 (Idaho Ct. App. 1987), the Court of Appeals of Idaho noted that the word "reformation," as contemplated by § 155 of the Restatement (Second) of Contracts, refers to the equitable remedy applicable in the "limited situation when the parties, having reached an agreement, failed to express it correctly in the writing."  Id. at 1080 (citing RESTATEMENT (SECOND) OF CONTRACTS § 155 (1979).)  Where a trial judge improperly used the word "reformation" in modifying a contract in a situation where there was mistake, the court of appeals found no error because the court had the power to instead eliminate the effect of the mistake by modifying the contract in the interests of justice.  Thieme, 745 P.2d at 1080.

At least one court has held that where the parties operated under a mutual mistake as contemplated by § 152, and it was reasonable under the circumstances to allocate the risk of that mistake on one party under § 154 of the Restatement (Second) of Contracts, the court could enter equitable relief as contemplated by § 158.  In United States v. Kloster, No. 05-40073, 2005 WL 2574722, at *1 (D.S.D. Oct. 12, 2005), the government prosecutor and the defendant agreed that the prosecutor would recommend to his supervisor to dismiss the defendant's indictment with prejudice, and both parties believed that the supervisor would follow the recommendation.[4]  The

---

[4] Although a criminal case, the prosecutorial agreement in issue was a contract.  "'[C]ooperation-immunity

supervisor, however, dismissed the indictment without prejudice and filed a new indictment. Id. at **1-3. The court determined that, in accordance with § 152 of the Restatement (Second) of Contracts, both parties were operating under a mistake with respect to the prosecutor's ability to dismiss the indictment with prejudice. Id. at *4. The court determined that it was reasonable under the circumstances to allocate the risk of the mistake onto the government pursuant to § 154, because the prosecutor

> had the authority to enter into this agreement with the Defendant and it was objectively reasonable for both [the prosecutor] and the Defendant to believe that if [the prosecutor] recommended a dismissal of the Indictment with prejudice, that recommendation would be followed given [the prosecutor]'s experience as a prosecutor and his intimate knowledge of the facts of this case.

Id. at *5. The court concluded that the appropriate remedy was specific performance, and cited § 158(2) of the Restatement (Second) of Contracts. Id.

The court believes its conclusions in this case are consistent and fair. In situations of mistake, the court is vested with considerable discretion. See RESTATEMENT (SECOND) OF CONTRACTS Ch. 6 Introductory Note at 381 (1979) ("The rules governing all of the situations dealt with in this Chapter [regarding mistake] have traditionally been marked by flexibility and have conferred considerable discretion on the court."); see also 3 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 613, at 709 (1960) (With respect to the equitable remedies in cases of mistake, "it should be remembered that in each case the exact form of judgment or decree is still in the hands of the court. . . . The power of the courts to make the remedy fit the special case is not extinct. . . . The decree of the court, therefore, should be moulded to suit the facts of each case as justice may require."). Here, the court exercised its remedial equitable powers to

---

agreements are contractual in nature and subject to contract law standards.'" Kloster, 2005 WL 2574722, at *2 (quoting United States v. Johnson, 861 F.2d 510, 512 (8th Cir. 1988)).

fashion a just result, finding that "justice requires that the Letter Agreements be reformed to provide that when Honeywell could not look to the bonds for protection, Limbach and Rost would be responsible for Honeywell's costs in the event Honeywell replaced CPS." (Doc. No. 89, Conclusions of Law ¶ 21.) While Honeywell assumed the risk that it would be obligated to perform CPS's end of the bargain without receiving payment under the bonds, Limbach knew Honeywell would not have entered into the Letter Agreements and would not have provided assurance that it would perform CPS's obligations unless Honeywell would receive payment for its costs. An agreement by Honeywell to assume the obligations of CPS without receiving its costs would have been irrational and against the parties' intent. The court refused to enforce the contract in a manner that wholly benefitted either Honeywell or Great American; rather the court modified the contract to reach a just result.

The court recognizes that it should have clearly stated it was modifying rather than reforming the contract. Here, there was a mutual mistake made in the Letter Agreements. The court exercised its equitable powers and fashioned a remedy to avoid an injustice. This discretionary exercise of power by the court in order to avoid an injustice and to grant relief, i.e. modification of the contract on "such terms as justice requires," was appropriate. See RESTATEMENT (SECOND) OF CONTRACTS § 158 (1979). The court additionally notes that the prayers for relief with respect to each count raised in Great American's complaint read "WHERFORE, Great American respectfully requests that it be awarded damages in excess of $388,000 together with interest and its attorneys' fees and costs and *such other relief as this Honorable Court deems appropriate*." (Compl. (Doc. No. 1) (emphasis added).) The court fashioned the remedy that it deemed just.

The court finds there is no need to correct manifest errors of law or fact or to prevent

11

manifest injustice.   There is no basis upon which Great American's motion for reconsideration can be granted, and Great American's motion is therefore **DENIED**.


Dated:     December 17, 2009

> By the court:
>
> /s/ Joy Flowers Conti
> Joy Flowers Conti
> United States District Judge